Filed 3/4/26  In re J.P. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.P., a Person Coming Under the Juvenile Court Law. | H052783 (Santa Clara County Super. Ct. No. 24JV46614A) |
| THE PEOPLE, Plaintiff and Respondent, v. J.P., Defendant and Appellant. | |

The juvenile court sustained an allegation that the minor J.P. committed an act which, if committed by an adult, would constitute a criminal threat.  J.P. contends on appeal that the evidence was insufficient to support the court's finding.  We reject the contention and will affirm the jurisdictional order.

## I.    BACKGROUND

A wardship petition alleged that J.P. threatened to commit a crime resulting in death or great bodily injury against another minor, D.C.  (Pen. Code, § 422, subd. (a).)  At the jurisdictional hearing, D.C. testified that she was walking home one day in September 2023 when she passed a group of people including J.P.  D.C. did not know J.P. but recognized him and "Dopey," another member of the group, as "southerners" who frequently targeted her with gang-related insults.

J.P. and Dopey were standing near a car with three other people, whom D.C. could not identify because they were wearing ski masks. The three masked members of the group stayed next to the car while J.P. and Dopey approached D.C. Dopey approached her from the front while J.P. approached her from the back. They told D.C., " 'Fuck you, bitch' " and " 'Fuck your family.' " D.C. thought she was "going to get jumped" and was afraid for her safety. When she turned around to walk away, she saw J.P. pointing a gun at her head. While J.P. pointed the gun at her, Dopey made comments including " 'Oh, just shoot her' " and " 'Do it.' " Believing she was about to be shot, D.C. ran away.

D.C. acknowledged on cross-examination that when she was interviewed by the police the day after the incident, she told them Dopey was the one with the gun and J.P. was the one who verbally threatened her. On redirect examination, D.C. explained, "I just must have got their names mixed up that day because I don't – didn't know who they were exactly. Just knew them by their gang names." She confirmed that J.P. had pointed a gun at her while Dopey spoke. She testified Dopey made numerous comments including " 'Buster bitch, we're going to kill you,' " and J.P. did not say anything during the incident.

The juvenile court found that D.C. was not "completely unbelievable, even though there was some inconsistency in her testimony." Based on D.C.'s various descriptions of the incident, the court found beyond a reasonable doubt that J.P. had committed the alleged offense as either a direct perpetrator (if he had verbally threatened D.C.) or an aider and abettor (if he had pointed the gun at her without saying anything). The court exercised its discretion to deem the "wobbler" offense a felony. At the dispositional hearing, the court declared J.P. a ward of the court and placed him on probation.

## II. DISCUSSION

J.P. argues the evidence was insufficient to support the juvenile court's finding that he threatened or assisted in threatening to commit a crime resulting in death or great bodily injury. His contention is subject to the same substantial evidence standard

2

applicable in adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) Under that standard, the question is " ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*Ibid.*) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.)

The juvenile court found J.P. committed the charged offense as either a direct perpetrator or an aider and abettor. A participant in a crime aids and abets the commission of that crime "when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

Addressing the version of events in which J.P. pointed a gun at D.C. while Dopey verbally threatened her, J.P. asserts his nonverbal conduct did not rise to the level of aiding and abetting. He correctly notes that mere presence at the scene of the offense would not make him an aider and abettor. But D.C. testified that J.P. and Dopey approached her in a coordinated manner from opposite directions, blocking her path, and that J.P. pointed a gun directly at her head from a short distance away. J.P. continued pointing the gun at D.C. while Dopey made comments threatening to kill D.C. and encouraging J.P. to shoot her. The court could reasonably conclude from that evidence that J.P. knew Dopey intended to threaten D.C., intended to assist in threatening her, and aided the threat by approaching D.C. and pointing a gun at her.

Addressing the alternate version of events in which J.P. himself made comments directed toward D.C. during the incident, J.P. contends those comments do not establish his intent to threaten D.C. He focuses on two comments: " 'Fuck you, buster bitch' " and " 'Fuck your family.' " D.C. initially testified on direct examination that both J.P.

3

and Dopey made those comments while approaching her, before clarifying on redirect examination that only Dopey had spoken throughout the entire incident. D.C. acknowledged that she had heard similar insults in the past and had sometimes simply responded by telling Dopey and his friends to "leave me alone." But D.C. also unambiguously testified that *after* J.P. and Dopey approached her, one of them pointed a gun at her while the other made expressly threatening comments. (She said J.P. had the gun and Dopey made the comments, although she had previously told police the opposite.) Whether or not J.P. said " 'Fuck you, buster bitch' " and " 'Fuck your family' " while approaching D.C., and even assuming those comments could not be considered threatening by themselves, the juvenile court could reasonably conclude from J.P.'s other conduct during the incident that he intended to threaten D.C.

J.P. also asserts D.C.'s testimony was "inherently improbable" and thus insufficient on its own to support the juvenile court's finding. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181.) He bases that assertion on D.C.'s varying descriptions of J.P.'s conduct during the incident. But D.C. consistently described that J.P. and Dopey approached her in a coordinated manner and that one of them pointed a gun at her while the other made threatening comments. Nothing in that testimony was inherently improbable so as to undermine the juvenile court's conclusion that she was not "completely unbelievable, even though there was some inconsistency in her testimony." We must defer to the juvenile court's conclusions regarding witness credibility and will affirm the jurisdictional order.

### III.   DISPOSITION

The order is affirmed.

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

H052783
*The People v. J.P.*